UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Rafeal Barrett, #317983, | ) | C/A No. 5:14-03901-MGL-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | Report and Recommendation |
| v. | ) | |
| | ) | |
| Sgt. T. Gibbons; and Mr. Adger, | ) | |
| Inspector General, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC") proceeding pro se, filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights. This matter is before the court on Defendants' Motion for Summary Judgment, ECF No. 92, filed on June 12, 2015, and Plaintiff's Motion for Summary Judgment filed on June 16, 2015, ECF No. 96. The court entered a *Roseboro* Order[1] on June 15, 2015, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 93. Defendants filed a Response in Opposition to Plaintiff's Motion on July 2, 2015, ECF No. 101, and Plaintiff filed a Response in Opposition to Defendants' Motion on July 9, 2015, ECF No. 102. Plaintiff filed a Reply on July 17, 2015, ECF No. 104, and Defendants filed a Reply on July 20, 2015, ECF No. 105. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C.

---

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

Because these Motions are dispositive, a Report and Recommendation ("R&R") is entered for the court's review.

I.      Background

Plaintiff is currently housed at McCormick Correctional Institution ("MCI"). ECF No. 1 at 2. Plaintiff filed his Complaint on October 7, 2014, asserting facts that allegedly give rise to an "[Eighth] Amend[ment] violation, Tort of [Assault] under South Carolina Law, Tort of [Professional Malpractice] under S.C. Law, and Discrimination." *See id.* In "Issue 1," Plaintiff alleges that on March 6, 2014, Defendant Gibbons, a correctional officer, "side kick[ed] the window," at the Wing Door of F-2-A-Side. *Id.* at 3. Specifically, Plaintiff alleges that Defendant Gibbons "kick[ed] a hole through the window and kick[ed] [Plaintiff] in the face, through the window." *Id.* As a result, Plaintiff alleges that his jaw and head were injured, and his teeth cut the inside of his cheek. *Id.* Additionally, Plaintiff alleges that "glass had cut [him] at the corner of [his] mouth and could have caused [him] to lose an eye!" *Id.*

In "Issue 2," Plaintiff alleges that about 10 to 15 minutes after Defendant Gibbons kicked him, he was taken to the prison E.R. *Id.* Plaintiff represents that Nurse T. James "handled the intake," and "became defensive on behalf of [Defendant] Gibbons." *Id.* Specifically, Plaintiff alleges that Nurse James told Plaintiff that Defendant Gibbons did not assault him, that "it wasn't possible, and [he] had to be lying as though she was [in] shock." *Id.* at 4. Further, Plaintiff maintains that Nurse James told him not to report the incident and "just say that he accidently slammed the door too hard." *Id.* Plaintiff also alleges that Nurse James called him a "snitch" and told him "it wasn't right for [Plaintiff] to be snitching on [Defendant] Gibbons like that." *Id.* Finally, Plaintiff represents: "Nurse James took it upon herself to alter [his] medical records so that it showed [that he] reported the incident as an accident [when] Plaintiff specifically told her

2

that [Defendant Gibbons kicked him] in the face [through] the window causing cuts inside and outside [his] mouth." *Id.*[2]

In "Issue 3," Plaintiff alleges that on March 31, 2014, he sent a "Request to Staff Member to the Division of Operations" reporting the alleged assault incident and asking them to administer a polygraph test on Defendant Gibbons. *Id.* Plaintiff maintains that he received a Response to his Request on April 10, 2014, indicating that his Request was forwarded to Mr. Adger, Inspector General-SCDC ("Defendant Adger"). *Id.* Plaintiff alleges that Defendant Adger did not respond to his Request and did not conduct a polygraph test on Defendant Gibbons.[3] *Id.*

Plaintiff prays that the court order Defendant Gibbons pay $570,000 as compensation for his Eighth Amendment Violation and order Defendant Gibbons pay an adequate punitive damage amount due to the health hazard and safety hazard caused by his assault. *Id.* at 5. Plaintiff also asks that the court order Defendant Gibbons to pay $300,000 for the tort of assault and another $300,000 for the tort of professional malpractice under South Carolina law. *Id.* Plaintiff asks that the court order Defendant Adger pay $300,000 for the tort of professional malpractice under South Carolina law and $375,000 as compensation for his failure to investigate, "with the same zeal as he would when a [female] is suspect[ed] of inmate relations, by administering a polygraph test on [Defendant] Gibbons." *Id.*

II.      Standard of Review

---

[2] Though Plaintiff initially named Nurse James as a Defendant, she was dismissed as a party to this action on April 13, 2015. *See* ECF No. 67. In its order, the District Court adopted the undersigned's recommendation to grant Plaintiff's Motion to Dismiss the Complaint as against Defendant Nurse T. James. *See* ECF Nos. 37, 57. Therefore, Defendant Gibbons and Defendant Adger are the only two remaining Defendants.

[3] Plaintiff contends that his request for a polygraph test "should have been freely complied with and granted because numerous [females] have been fired because they failed lie detector tests. These tests are usually conducted on females who are suspected of having relationships with prisoners." *Id.*

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs*., 901 F.2d 387 (4th Cir. 1990).

III.    Analysis

    1.  Defendants' Motion for Summary Judgment

A. Failure to Exhaust

Defendants argue that Plaintiff has not exhausted all the issues he asserted in his Complaint. ECF No. 92-1 at 2. Specifically, Defendants assert that Plaintiff "failed to file a grievance against Inspector General Adger [so] Plaintiff has not exhausted his administrative remedies on those issues." *Id.* at 2-4. Plaintiff objects to Defendants' argument that his exhausted grievance "only dealt with the actions of [Defendant] Gibbons." ECF No. 102 at 2. Plaintiff admits in his objection that his exhausted Step One grievance, "McCI-0147-14," dealt with the actions of [Defendant] Gibbons. *Id.* Thereafter, Plaintiff represents that in his Step Two grievance he "appealed the Step 1 decision because S.C.D.C. had failed to administer the polygraph test on [Defendant] Gibbons. . . ." *Id.* Plaintiff asserts that this failure on the part of SCDC was directed to the actions of Defendant Adger although at that time Plaintiff did not know his name.

Pursuant to 42 U.S.C. Section 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "it is the prison's requirements, and

5

not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). However, '[d]efendants may . . . be estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures.'" *Stenhouse v. Hughes*, C/A No. 9:04-23150-HMH-BHH, 2006 WL 752876, at *2 (D.S.C. Mar. 21, 2006) (quoting *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004)).

In Plaintiff's Step One Grievance, he alleges that Defendant Gibbons assaulted him by kicking in a glass window. ECF No. 92-4 at 1. There he requested that Defendant Gibbons "be terminated from SCDC and charged with assault." *Id.* There is no mention of a polygraph test, Defendant Adger, or a person in Defendant Adger's position in this Grievance. *See id.* As Plaintiff represents, in his Step Two Grievance, he argued that "[i]t is clear that a lie detector test should be administered on [Defendant] Gibbons, but no one is taking the initiative to ensure one is administered. . . ." *Id.* at 3.

The undersigned finds that Defendants have demonstrated (and Plaintiff concedes) that Plaintiff failed to file a Step One grievance concerning Defendant Adger and his alleged failure to administer a lie detector test on Defendant Gibbons. Therefore, the undersigned recommends that Defendants' Motion for Summary Judgment for Plaintiff's failure to exhaust administrative remedies concerning Defendant Adger and a purported claim for failure to administer a lie detector test be granted, Defendant Adger be dismissed as a party to this action, and the failure to administer a lie detector test on Defendant Gibbons be dismissed as a claim.

### B.  Defendant Adger

To the extent the District Court determines that Plaintiff exhausted his administrative remedies concerning a cause of action against Defendant Adger, Defendants maintain that

Plaintiff's Complaint fails to state a cause of action against Defendant Adger. ECF No. 92-1 at 5. Specifically, Defendants argue that "[t]here is no case law requiring or even suggesting that a polygraph examination is beneficial in these circumstances, [and] the results of polygraph examinations are not admissible in a court of law." *Id.* Plaintiff responds and maintains that it is "obvious that [Defendant] Adger should have used the polygraph test as a means to terminate [Defendant] Gibbons' employment for violent conduct just like he would with females accused of inmate relations within S.C.D.C." ECF No. 102 at 5.

The undersigned agrees with Defendants. Although state prisoners retain many constitutional rights, incarceration inherently limits certain constitutional rights of prisoners. When a person is lawfully convicted and confined to jail, he or she loses a significant interest in his or her liberty for the period of the sentence. *See Gaston v. Taylor,* 946 F.2d 340, 343 (4th Cir. 1991). In the instant case, Plaintiff's Complaint fails to state a claim on which relief may be granted by this court because the alleged violation of failing to administer a polygraph test on a correctional officer is not a cognizable constitutional violation. *See Hall v. McCabe*, No. CA 8:11-1317-TLW-JDA, 2011 WL 5083219, at *2 n.2 (D.S.C. July 8, 2011) *report and recommendation adopted*, No. CA 8:11-1317-TLW, 2011 WL 5082201 (D.S.C. Oct. 25, 2011) ("Plaintiff does not have a constitutional right to a polygraph test. . . ."). To the extent the District Court determines that Plaintiff exhausted his administrative remedies concerning a cause of action against Defendant Adger, the undersigned recommends dismissing the cause of action for failure to state a claim upon which relief can be granted.

### C. Eighth Amendment Violations/Excessive Force (Defendants' Arguments Four and Five)

Defendants argue that Plaintiff cannot state an Eighth Amendment violation. ECF No. 92-1 at 5-7. Specifically, Defendants maintain that Plaintiff has failed to show a serious

7

deprivation of care. *Id.* at 7. Plaintiff responds and maintains that it is incorrect for Defendants to state that he cannot make an Eighth Amendment violation cause of action for Defendant Gibbons' attack. ECF No. 102 at 4-6. The undersigned finds that Plaintiff's cause of action against Defendant Gibbons is akin to an Eighth Amendment excessive force cause of action which Defendants address in their fifth argument. Moreover, as previously noted, Nurse James was dismissed as a party to this action—so, there is no longer an Eighth Amendment medical indifference claim at issue. Therefore, the undersigned will consider only the excessive force argument.

In their fifth argument, Defendants argue that Defendant Gibbons did not use excessive force against Plaintiff, and they rely on the attached affidavit of Defendant Gibbons to support their assertion. ECF No. 92-1 at 7. Further, Defendants maintain that the declarations submitted by Plaintiff demonstrate facts that are not in dispute, and therefore, Plaintiff cannot satisfy the subjective or objective requirement to establish an Eighth Amendment claim for use of excessive force. *Id.* at 8. Plaintiff responds and maintains that "not only did [Defendant] Gibbons use excessive force, he used force that was not needed." ECF No. 102 at 8. Further, Plaintiff argues that based on "the supporting witness declarations [he has] filed, [he] genuinely [disputes] the Defendants' version of facts." *Id.* at 9.

The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish a constitutional excessive force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components.

8

For the subjective component, Plaintiff must prove that Defendant assaulted and restrained him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Id.* at 321.

First, the undersigned finds that no evidence demonstrates that Defendant Gibbons used force against Plaintiff. Rather, he admittedly kicked the bottom of a door, shattering its glass window pane. *See* ECF No. 92-4. Plaintiff attaches four Declarations to his Motion for Summary Judgment in support of his excessive force cause of action. There, four fellow inmates attest that Defendant Gibbons kicked a door, and when the glass in the window pane shattered, Plaintiff was cut in the face. *See* ECF Nos. 96-1 at 1-4. According to the Declaration of Tony Gilliard, he saw Defendant Gibbons kick in the glass out of 1-2[,] a wing door playing." *Id.* at 2. Inmate Larry Coles states in his Declaration that when Plaintiff was cut by the glass, Plaintiff told Defendant Gibbons "see what you done did playing you done kick me in my face." *Id.* at 3. Therefore, the undersigned finds that there is no evidence that Defendant Gibbons acted maliciously or sadistically towards Plaintiff because force was directed at a door, not Plaintiff, and the perception of the inmate witnesses, including Plaintiff, was that Defendant Gibbons was "playing" when he kicked the door.

To the extent the *Whitley* factors need to be addressed, the undersigned finds the test weighs in favor of Defendant Gibbons. Considering the first *Whitley* factors, the undersigned

finds that there is a question of fact concerning whether there was a need for force. Plaintiff maintains that the "wing door was closed and lock[ed]. [He] couldn't get out if [he] wanted to, [and] [t]here was no need for [Defendant] Gibbons to kick the door at all." ECF No. 102 at 8. However, in his affidavit, attached as an Exhibit to Defendants' Motion, Defendant Gibbons attests, verbatim, that on the day of the incident:

> I was closing the A wing door in dorm unit F-2 at McCormick Correctional Institution. I had already told the Plaintiff several times earlier that afternoon to clear the sally port area and return to his assigned side. As the door was closing, to prevent the Plaintiff from exiting the wing, I kicked the bottom of the door.

ECF No. 92-4 at ¶¶ 2-4. Therefore, the first factor does not weigh in either Defendant Gibbons or Plaintiff's favor. Turning to the second *Whitley* factor, the relationship between the need for force and the amount of force used, the undersigned again notes that any force taken on Defendant Gibbons' part was directed at the door. Therefore, this factor weighs in Defendant Gibsons' favor.

Turning to the extent of Plaintiff's injuries under the third prong of *Whitley*, the evidence before the court demonstrates that Plaintiff suffered a laceration on his bottom inner lip from shattered glass as a result of the incident. *See* ECF Nos. 92-5 at 2; 96-2 at 3-4. Specifically, in an Affidavit attached to Defendants' Motion, Nurse James attests that she treated Plaintiff following the incident "for a 1/4 inch cut to the bottom left of his inner lip as a result of a glass shattering in a door that was kicked by an officer." ECF No. 92-5 at ¶ 2. According to medical encounter 96, attached to Nurse James' affidavit, Plaintiff was treated by having the cut cleaned with soap and water, Neosporin, and a loose sterile bandage. ECF No. 92-11. Though not outcome determinative, the undersigned finds that Plaintiff suffered only a minor cut or injury as a result of the incident. *See Hudson v. McMillian*, 503 U.S. 1, 7, (1992) ("The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). Finally, the

10

undersigned examines the fourth prong of *Whitley*, the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them. The Fourth Circuit has held that a prison official may use reasonable force to compel obedience or to subdue recalcitrant prisoners. *See Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984); *see also Hill v. Crum*, 727 F.3d 312, 328 n.3 (4th Cir. 2013) (noting there is a distinction "between instances where force is applied to restore order and instances where it is applied without justification."). As reasonably perceived by Defendant Gibbons, Plaintiff was being non-compliant with his instruction to return to his assigned area. ECF No. 92-4. Therefore, this factor also weighs in Defendant Gibbons' favor.

The undersigned finds that undisputed facts demonstrate that Defendant Gibbons did not act with a sufficiently culpable state of mind, and Plaintiff's injury was not sufficiently serious to support an Eighth Amendment excessive force cause of action. Therefore, the undersigned recommends Defendants' Motion for Summary Judgment be granted on Plaintiff's excessive force claim.

### D. Qualified Immunity

Defendants argue they are entitled to qualified immunity because "[a]ssuming *arguendo* that Plaintiff's allegations illustrate a deprivation of constitutional rights, the preceding discussions show that it would not be clear to a reasonable officer in those circumstances." ECF No. 92-1 at 8-9.

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004) (internal citation omitted). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* at 301-02 (citations and internal quotation omitted).

Based on the analysis of the facts presented in the sections above and considering the facts in the most favorable light to the Plaintiff, the undersigned recommends granting Defendants qualified immunity. The record before the court shows that Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff of which they were aware in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendants be granted qualified immunity.

### E.  Professional Malpractice

Defendants argue that Plaintiff's Complaint fails to state a cause of action against the Defendants for professional malpractice. ECF No. 92-1 at 4. Additionally, Defendants maintain that "[t]here is no cause of action for professional malpractice against a Correctional Officer or against an Inspector General for failing to investigate." *Id.* at 5. In Response, Plaintiff argues that both Defendants subjected him to First, Eighth, and Fourteenth Amendment violations which are cognizable claims under 42 U.S.C.A. § 1983. ECF No. 102 at 3. Plaintiff also includes the elements for a "claim of Professional Malpractice under South Carolina law," and asserts that he is entitled to compensation for his claim under supplemental jurisdiction. *Id.*

In addition to his federal claim, Plaintiff is bringing a separate state law claim. If the court accepts this Report and Recommendation, the only claims within the court's original jurisdiction will be dismissed. Without Plaintiff's § 1983 claims, Plaintiff's sole remaining cause of action—a purported state law claim for professional malpractice—is based on the court's supplemental jurisdiction. Section 1367(c)(3) of Title 28 of the United States Code provides that the district courts "may decline to exercise supplemental jurisdiction [as to claims forming the same case or controversy as those within the court's original jurisdiction] if the district court has dismissed all claims over which it has original jurisdiction[.]" Trial courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (district court did not abuse its discretion in declining to retain jurisdiction over the state law claims); *See also, e.g.*, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966); *Wauben v. Protega (USA), Inc.*, No. 2:05–2780–PMD–RSC, 2007 WL 775614, at *14 (D.S.C. Mar. 9, 2007) (declining to exercise supplemental jurisdiction over state-law claims upon granting summary judgment as to Title VII claim).

13

Therefore, the undersigned recommends the court decline to exercise supplemental jurisdiction over Plaintiff's state-law claim for professional malpractice and dismiss that claim without prejudice to its being filed in state court, thus ending the action here.

2. Plaintiff's Motion for Summary Judgment

On June 16, 2015, Plaintiff filed a Motion for Summary Judgment. ECF No. 96. Therein, Plaintiff asked the court to grant him summary judgment based on four Declarations attached to his Motion, the Request form he sent the Division of Operations asking for a polygraph to be administered, and his medical record allegedly proving that Nurse James altered his medical complaint. *Id.* at 1-2.

Defendants responded and assert that Plaintiff has not exhausted all issues raised in his Complaint; Plaintiff fails to state a cause of action against Defendants for professional malpractice; Plaintiff's Complaint fails to state a cause of action against Defendant Adger; Plaintiff cannot state an Eighth Amendment violation; Defendant Gibbons did not use excessive force against Plaintiff; Defendants are entitled to qualified immunity; and Defendant Gibbons did not assault Plaintiff. ECF No. 101.

The undersigned agrees with Defendants. As discussed in the sections above, no genuine issues of material fact exist concerning Plaintiff's allegations of constitutional rights violations. Accordingly, the undersigned recommends that Plaintiff's Motion for Summary Judgment, ECF No. 96, be denied.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 92, *be granted*, Plaintiff's Motion for Summary Judgment, ECF No. 96 be *denied*, and that this case be dismissed.

IT IS SO RECOMMENDED.

September 29, 2015                                                Kaymani D. West
Florence, South Carolina                                          United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**